UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHAVIS VAN & STORAGE OF MYRTLE BEACH, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:11CV1299 RWS ) |
| UNITED VAN LINES, LLC, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

On February 4, 2014, I ordered plaintiff Chavis to supplement its opposition to summary judgment for the purpose of identifying the specific carrier policies currently in existence that it believes are being violated by United, and how United's conduct constitutes a breach of the agency agreement.[1] I requested supplemental briefing because Chavis had not clearly articulated its breach of contract claim in its filings before the Court. In response, Chavis filed a supplemental memorandum which unsuccessfully attempts to recast its breach of contract claim as something other than what it really is — a claim that it has the exclusive right to service shipments into and out of Shaw Air Force Base. It does not, so defendants' summary judgment will be granted.[2]

---

[1]In this same Memorandum and Order, I also ruled that the agency agreement unambiguously gives United the right to change its carrier policies, and this does not constitute a "change in the agreement" requiring Chavis' written consent. I also held that the agreement plainly provides that Chavis is a "non-exclusive" agent and is not entitled to act as the sole agent servicing Shaw AFB as a matter of law. Finally, I found as an undisputed fact that any hard copy policies pre-dating the bulletin date of September 3, 1996 were replaced by the online agency manual and could not form the basis of Chavis' breach of contract claim as a matter of law.

[2]Incredibly, Chavis attempts to blame the Court for its inability to state a breach of contract claim because I declined to compel defendants to respond to Chavis' irrelevant and

I will not restate the background facts or standards applicable to summary judgment, which were set out in my February 4, 2014 Memorandum and Order. Chavis has alleged that, according to current United carrier policies which are incorporated into the agency agreement, that "the local agent must be assigned as origin or destination agent."[3] For non-military shipments, Chavis claims that "the local agent" is the agent closest to the origin or destination address. And for military shipments, Chavis asserts that it is "the only authorized agent" to service Shaw AFB and that it must therefore be appointed as the origin and destination agent for these shipments.

The problem with these arguments is that they are not supported by any evidence. First, as I have already ruled, Chavis is not the exclusive agent for Shaw AFB. The agency agreement plainly provides that Chavis is a non-exclusive agent. In fact, the unambiguous language of the agreement does not grant *any* territory or service area to Chavis, nor does it guarantee Chavis the right to *any* shipments -- let alone *all* shipments to or from Shaw AFB or any other geographic area. None of the supposed carrier policies cited by Chavis in opposition to summary judgment support this argument, either. Instead, the agreement merely grants Chavis the right to participate as *an* agent of United and to compete for shipments. To put it plainly, Chavis fails to grasp the

---

overly burdensome discovery requests. Yet Chavis cannot explain how it could even bring, no less maintain, a breach of contract claim without even knowing what contract terms defendants allegedly breached. Throughout this case, Chavis has employed a "throw everything against the wall and see what sticks" approach to litigation. The resulting mess is of its own -- not the Court's -- making.

[3]"The origin agent is the agent that goes to the residence or business to visually inspect the shipment, prepare a cost estimate, perform all packing . . . and other duties prior to the shipment being picked up by the hauling agent." (Comp. ¶ 53). The destination agent is the United agent that unpacks, stores-in-transit, or performs any other services needed to complete the move. (Id. at 56).

distinction between *an* agent of United and *the* agent of United.

To support its breach of contract claim, Chavis argues that two provisions in the agency agreement, three policies from an internal manual prepared for United's Board of Directors in 2005, and a rescinded resolution from an April 2009 Board of Directors meeting constitute carrier policies and grant Chavis exclusive rights to non-military shipments in a certain area. Even if these were actual carrier policies, they do not give Chavis any rights to serve as exclusive origin and destination agent. For example, the policy that "booking agents are required to appoint fully authorized United Van Line agents to represent them as origin and destination agents" merely requires a booking agent (which is not even United) to appoint *an* authorized agent.[4] It does not require the appointment of any particular United agent (whether defined by proximity or otherwise) and in fact contemplates the appointment of any number of *agents* to provide origin or destination services. The same is true of the agency agreement's purported policy requiring a booking agent "to appoint *an* origin or destination agent when the Agent is at a point other than point of origin or destination and the Agent is not prepared to perform the necessary origin Transportation Services . . . ." (emphasis supplied). Although Chavis argues that this policy requires a booking agent to appoint "*the* local United agent where the shipment originates [or terminates]," this argument is contrary to the plain language of the agreement which unambiguously says "*an*" agent, not "*the*" agent. Once again, Chavis fails to grasp the distinction between "*an* " and "*the*." This distinction, however, is fatal to Chavis' breach of contract claim. Moreover, this provision of the agreement does not use the phrase "local agent"

---

[4]Booking agents are other United agents that take the customer's order and register the move with United. (Comp. ¶ 51).

as argued by Chavis. Chavis cannot rewrite the unambiguous language of the agency agreement to create a requirement that the booking agent appoint "the local agent" when no such requirement exists. The language plainly permits the appointment of any origin or destination agent and cannot be read to state otherwise. The same analysis applies to the agency agreement's requirement to appoint "*an* agent of the Carrier as an origin agent when the Agent secures an order involving a shipment originating from the warehouse of an agent of the carrier." (emphasis supplied).

The Court is at a loss to understand how the two cited board book policies on page 8 of Chavis' supplemental memorandum in opposition to summary judgment could even remotely support its breach of contract claim. One such alleged carrier policy merely permits an existing agent to comment on a prospective new agent's application, and the second simply states that United shall consider "the facts of each case" when deciding whether to permit an agent to relocate. These alleged policies do not speak to Chavis' alleged right to serve as origin or destination agent for any shipment and do not support any breach of contract claim. Moreover, Chavis cannot claim that a resolution by United's Board of Directors from April of 2009[5] is an existing carrier policy and part of the agency agreement because the undisputed facts demonstrate that this resolution was rescinded after approval and was never even implemented or distributed to agents. Even if the resolution did apply, it would still not afford Chavis the relief it seeks because the resolution speaks only of assigning "*a*" local agent for origin and destination

---

[5]The resolution stated that "where United Van Lines and/or Mayflower Transit has an authorized agent either the market or within 100 miles of origin or within the local agent's public service radius, an agent operating under a United or Mayflower Agency Agreement . . . is required to assign a local agent for origin and destination services."

services. Once again, the agency agreement does not grant Chavis any rights to any particular shipments and does not support Chavis' breach of contract claim.

To the extent Chavis continues to assert that it is entitled to be the exclusive agent for military shipments to and from Shaw AFB, I have already ruled that this claim is precluded as a matter of law by the unambiguous language of the agency agreement. Moreover, the alleged carrier policies cited by Chavis in its supplemental brief do not support this contention or change my decision that any breach of contract claim premised on this argument fails. The first purported policy, which states that "military agency systems . . . will be made up of United agents whenever possible," also provides that "[i]f current United agents are fully represented at a specific military installation, military carrier agents may seek non-United agent representation." This alleged carrier policy only applies to United agents when they act *independently* as carriers to contract directly with the military. Moreover, it leaves the determination of when and whether to use United agents to service these shipments to the independent carrier agents themselves. It certainly does not designate Chavis as "*the*" agent or the exclusive agent for Shaw AFB for any military shipments (whether independently obtained or not), as once again it talks about United *agents*, not *agent*. As for the alleged carrier policy authorizing United "to appoint military only agents at military bases where the corporation has no current representation," it only applies in situations where United itself (as opposed to its agents) obtains military shipments directly from the government for a military base where United has no agents. This certainly does not apply here, where Chavis and other United agents service Shaw AFB. Moreover, this alleged policy does not speak to which destination and origin agents should be appointed: it deals instead with

booking agents, which is not even part of Chavis' claim.[6] Nor has Chavis shown that the government bulletin cited on page nine of its supplemental brief applies here, as it deals with emergency situations where storage must be found on short notice and does not even address appointment of origin or destination agents. But the complete lack of support for its claim to exclusivity is perhaps best illustrated by Chavis' reliance on an internal directory listing as "evidence" that it is the only agent entitled to service Shaw AFB. This directory does not state that Chavis is the "only" agent for Shaw AFB, and the fact that Chavis suggests that it somehow affords them exclusivity rights under the agency agreement strains credulity. The same is true of Chavis' reliance on a newsletter stating that "when agents in the area are unable to provide the required services, the selection of the booker/origin agent will move outside the area of responsibility." This says nothing of Chavis' alleged right to exclusivity and does not support its breach of contract claim in any way.

To the extent Chavis' argument that "all interstate shipments booked by United agents constitute United shipments such that United's policies apply" merely restates its argument in opposition to summary judgment that "United is bound by its contract with Chavis directly and under principal/agent law," it is preempted by the Federal Aviation Administration Authorization Act of 1994 (FAAAA), which I have already discussed at length in my Memorandum and Order dated January 2, 2012. [Doc. #37]. As I explained in that Memorandum and Order dismissing plaintiffs' state law claims for breach of implied contract (Count II), breach of the covenant of good faith and fair dealing (Count III), promissory estoppel (Count IV), fraudulent misrepresentation (Count V), negligent misrepresentation (Count VI), tortious interference with

---

[6]At the risk of again pointing out the obvious, it also talks about "*agents*," not "*an*" agent.

business expectancies (Count VII), and civil conspiracy (Count VIII), any argument that United should be held liable in a breach of contract claim for actions taken by other United agents under principals of agency law is "outside the four corners of the contract . . . , and . . . enlarged or enhanced, and indeed, . . . dependent upon, Missouri state laws and policies." Data Mfg., Inc. v. United Parcel Service, Inc., 557 F.3d 849, 853 (8th Cir. 2009) (breach of contract claim was preempted by FAAAA to the extent it relied on arguments that contract was a penalty, unlawful, and void as against public policy; only claim that plaintiff did not agree to pay a fee as part of the contract could go forward because it was "four-corners claim solely between the parties that does not derive from the enactment or enforcement of state law ."). As such, the claim would be preempted, just as the other state law claims previously dismissed by the Court.

To the extent Chavis cites these provisions contained in its own agency agreement with United, they still do not demonstrate that Chavis was entitled to any shipments, let alone that Chavis was entitled to act as the exclusive agent for Shaw AFB. That Chavis agreed to "accept and process orders" subject to acceptance by United and in compliance with United's policies, to represent United "in and active and aggressive manner," and to register with United all interstate shipments in no way renders the agency agreement ambiguous or creates a genuine issue of fact regarding whether the agency agreement guaranteed certain shipments to Chavis.[7] It does not. The agency agreement plainly provides that Chavis is an non-exclusive agent, and the unambiguous language of the agreement does not grant *any* territory or service area to Chavis, nor does it guarantee Chavis the right to *any* shipments -- let alone *all* shipments to or from Shaw

---

[7]The other two purported policies cited on page seven of Chavis' supplemental brief are completely irrelevant to its breach of contract claim as they have nothing to do with the appointment of origin or destination agents.

AFB or any other geographic area. In light of these undisputed facts, Chavis' breach of contract claim fails as a matter of law.

Finally, the agency agreement is unambiguous and contains an integration clause ("This is the entire Agreement between the Carrier and the Agent and supercedes all previous agreements between the parties.") . As I explained in my February 4, 2014 Memorandum and Order, for this reason the terms of the parties' agreement cannot by varied by extrinsic evidence. <u>Allison v. Flexway Trucking, Inc.</u>, 28 F.3d 64, 67 (8th Cir. 1994) (applying Missouri law); <u>see</u> <u>also</u>, <u>Union Elec. Co. v. Fundways, Ltd.</u>, 886 S.W.2d 169, 170-71 (Mo. Ct. App. 1994) (holding that "[e]xtrinsic evidence of a prior or contemporaneous agreement is generally not admissible to vary, add to, or contradict the terms of an unambiguous and complete written document . . .," noting that "[t]he parol evidence rule is a rule of substantive law . . ." and "is particularly applicable in situations like this where the writing contains an integration clause and requires any additions to or alterations in the contract to be in writing and signed by both parties."). Although Chavis struggles mightily to distinguish this basic principle of Missouri law, the cases it relies upon do not apply in this situation where the contract is unambiguous and integrated, and the meaning advanced by Chavis would contradict it. In any event, as just discussed, the evidence offered by Chavis in no way supports its breach of contract claim.

Chavis was given ample opportunity to demonstrate a triable issue on its breach of contract claim. Instead, defendants have shown that there are no genuinely disputed facts and that they are entitled to judgment as a matter of law on the remaining claim in this case. For these reasons and the reasons stated in my February 4, 2014 Memorandum and Order, Chavis' breach of contract claim fails as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is granted, and plaintiffs' complaint is dismissed with prejudice.

A separate Judgment will issue this same date.

                                                                               _____
                                                                               RODNEY W. SIPPEL
                                                                               UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2014.